**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES**, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:20-CR-51 |
| v. : | |
| : | **JUDGE SARAH D. MORRISON** |
| **AARON FORD**, : | |
| : | |
| Defendant. : | |

**OPINION & ORDER**

Defendant Aaron Ford's Motion to Revoke Magistrate's Detention Order (ECF No. 17) and the Government's Opposition thereto (ECF No. 18) are presently before the Court for consideration. The Court determines that the motion is suitable for a decision without a hearing given current health concerns and restrictions.

**I.      BACKGROUND**

Mr. Ford was arrested on March 3, 2020 on charges of knowingly possessing a firearm as a convicted felon and possessing a firearm after having previously been convicted of a domestic violence offense. (ECF No. 1.) Magistrate Judge Vascura ordered him detained that same day pending a detention hearing. (ECF No. 5.) The Magistrate held that hearing on March 6, 2020 and considered the factors set forth in 18 U.S.C. § 3142(g). (ECF No. 8.)  She determined that the Government had proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. *Id*. Her reasons for so holding included: the weight of the evidence against Mr. Ford was strong; Mr. Ford's prior criminal history; his participation in criminal activity while on probation, parole, or supervision; his history of violence or use of weapons; his lack of stable employment

1

and his prior violations of probation, parole, or supervised release. *Id*.; *see also* audio of March 6, 2020 detention hearing at 27:20-39:34.

The March 12, 2020 two-count Indictment charges Mr. Ford with violating 18 U.S.C. §§ 922(g)(9) and 924(a) by knowingly possessing a firearm after being convicted of domestic violence and 18 U.S.C. § 922(g)(1) and 924(a) by being a felon in possession of a firearm. (ECF No. 11.) The Indictment contains a forfeiture allegation for the gun at issue. *Id*. Mr. Ford plead not guilty on March 24, 2020. (ECF No. 14.)

His jury trial is presently scheduled for July 27, 2020.

### III.    DISCUSSION

In sum, Mr. Ford wants to be released from pre-trial detention to electronic home confinement with GPS monitoring at his aunt's residence because of coronavirus and his resultant inability to communicate with counsel. He presents this request in a boilerplate motion the Court has seen several times before with only minimal alteration. He attaches a declaration from a doctor in California who has absolutely no connection to this case generically opining on the risk of COVID-19 transmission in jails. Yet, Dr. Williams, the declarant, does not aver that she has ever set foot in, or performed specific research on, the Jackson Pike facility where Mr. Ford is being detained. And, she specifically limits the declaration's use to defendants whose release does not jeopardize public safety. (ECF No. 17-1 at ¶ 4.) As shown below, Mr. Ford does not fall into that category. Thus, her affidavit is completely irrelevant.

Also of no use is Mr. Ford's recitation of multi-layered hornbook hearsay to the effect that an unidentified person at the public defender's office spoke to another unidentified individual at Jackson Pike who allegedly said that an unidentified guard told an unidentified inmate that several unidentified guards have tested positive for COVID-19. (ECF No. 17 at 5.)

2

Lastly, Mr. Ford references a news article discussing possible unsanitary conditions at the Franklin County Jail in downtown Columbus. (ECF No. 17 at 3.) But Mr. Ford is housed at Jackson Pike, and he makes no similar argument about that facility. *Id.* The article is therefore of no use to the instant discussion.

Having established what the Court cannot rely on when addressing his ask, the Court turns to what it can—the statutory bases for the motion. He cites to 18 U.S.C. § 3145(b), which permits review of detention orders issued by Magistrate Judges, and to 18 U.S.C. § 3142(i) of the Bail Reform Act, in support.

Section 3145(b) governs review of detention orders and provides that "[i]f a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." Reconsideration of a defendant's detention order may be granted only on new information "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *United States v. Shelton*, No. 3:19-cr-14, 2020 U.S. Dist. LEXIS 62655, at *4-5 (W.D. Ky. Apr. 9, 2020) (quoting 18 U.S.C. § 3142(f)); *see also United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) (citing 18 U.S.C. § 3142(f)(2)(B)). "New and material information for § 3142(f)(2)(B) purposes consists of . . . truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, at *6-8 (N.D. Ohio Dec. 18, 2009) (citation omitted).

Mr. Ford maintains that COVID-19 qualifies as each of those. Due to the virus, the President of the United States has declared a national health emergency, the federal courthouses within this district are closed until June 1, 2020 pursuant to General Order 20-08, and Ohio's

Governor has issued a statewide "Stay at Home" order. Governor DeWine's order is designed to facilitate social distancing among individuals to slow the spread of COVID-19 and permit health care facilities to sufficiently treat the expected influx of those infected with the virus.

Mr. Ford notes that social distancing is nearly impossible in the confined setting of the county jail where he is currently incarcerated. He states that his walker further exacerbates his inability to distance himself from others. In contrast, the Government argues COVID-19 changes nothing because no conditions exist that would assure the public's safety were he to be released. (ECF No. 19 at 1, 3.)

The Court concurs that COVID-19 presents a novel and unprecedented change in circumstances. But that change presently plays no *material* role as to whether there are conditions of release that will reasonably assure the safety of the public were Mr. Ford to be released. Material information is information "of a nature that . . . would increase the likelihood that the defendant is less likely to pose a danger to the community." *Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). The mere possibility of Mr. Ford's contracting COVID-19 while *inside* Jackson Pike is of no import to his risk of harm to the public *outside* of the facility. Mr. Ford's Motion to Revoke (ECF NO. 17) is therefore **DENIED** under § 3142(f). *See United States v. Rivera*, No. 09-CR-619 (SJF), 2010 WL 1687069, at *3 (E.D.N.Y. Apr. 21, 2010) (defendant "has not demonstrated that the circumstances concerning his bail application have significantly changed since Magistrate Judge Orenstein's detention order so as to warrant reopening the detention hearing and releasing [defendant] on bail" under § 3142); *see also United States v. Rodriguez-Adorno*, 606 F. Supp. 2d 232, 234, 237-239 (D.P.R. 2009) (declining to reopen magistrate judge's denial of bond because defendant presented no new material evidence to the district court); *see also United States v. Perozzi*, No. 09CR117-16-SM, 2009 WL

2929292, at *2 (D.N.H. Sept. 9, 2009) (same); *see also United States v. Juarez*, No. 2:16-cr-00265-GMN-CWH-23, 2018 U.S. Dist. LEXIS 211036, at **6-7 (D. Nev. Dec. 13, 2018) (denying defendant's motion for review of magistrate's denial of defendant's motion for reopening of bond proceedings that took place before the magistrate partly for lack of new material evidence and noting the new material evidence requirement is "strictly interpreted").

Assuming, arguendo, that COVID-19 satisfies § 3142(f)'s new and material information requirement, the Court proceeds to a further review of Magistrate Vascura's detention order utilizing the *de novo* standard. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (explaining that although the Sixth Circuit has not mandated a particular standard of review, "the majority view appears to favor . . . *de novo* review of detention orders").

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A defendant may be detained pending trial only when a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 U.S. Dist. LEXIS 96776, at *5 (E.D. Tenn. June 10, 2019) (quoting *United States v. Hernandez*, No. 1:02-CR-006, 2002 U.S. Dist. LEXIS 26904, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) (citing *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). Here, the Government contends only that Mr. Ford is a danger to the community. Thus, the Government must prove that he is a danger to the public for which no condition or set of conditions will reasonably assure the community's safety by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

5

The Magistrate correctly found that the Government satisfied its burden. Mr. Ford was convicted at age seventeen of carrying a concealed weapon. Two years later he was charged with drug possession and sentenced to probation, which was revoked. He served a six-month sentence for drug charges in 2010 before being charged with aggravated menacing and aggravated burglary. Those charges were dismissed. In 2013, he served six months in jail for aggravated menacing and an additional six months for violating a domestic protection order. While on probation for the domestic charge, he was arrested for a probation violation. In 2015 he served approximately four months in jail for assault. Weapons charges that year led to another six months sentence after which he had his probation revoked due to two new criminal charges. Those charges were for domestic violence and resulted in yet another four-month sentence. He returned to jail in 2016 for violating a domestic protection order. He subsequently served additional time between 2017 and 2018 for assault, obstructing official business and petty theft. In 2019 he was charged with using a firearm while possessing drugs, having a weapon while under disability, and improper handling of a firearm. A warrant was issued when he failed to appear at his arraignment. Those charges remain pending. He also has pending charges from February 2020 for aggravated burglary and burglary against the mother of his child who has a protective order against him. In sum, his adult criminal history spans more than a decade and is extensive and violent. Clear and convincing evidence supports the finding that he is a danger to the community.

Under the Bail Reform Act, the Court must next determine "whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community[.]" 18 U.S.C § 3142(g). *United States v. Haun*, No. 3:20-CR-024-PLR-DCP, 2020 U.S. Dist. LEXIS

63904, at *3-4 (E.D. Tenn. Apr. 10, 2020). In making this determination, the Court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

§ 3142(g). If the Court determines that a detention order is necessary, it shall submit a written statement of the reasons for the detention. 18 U.S.C. § 3142(i)(1).

Neither side addresses the § 3142(g) factors. The Court, however, has assessed Mr. Ford's motion, the Government's opposition and the audio recording of the March 6, 2020 detention hearing. In light of those actions, the Court has reviewed Magistrate Judge Vascura's detention order (ECF No. 8) *de novo*. Pursuant to the requisite factors, the Court makes the following findings.

*Nature and Circumstances of the Offenses Charged*. The underlying charges involve possession of a firearm as a felon. The nature and circumstances of the charged offenses support Mr. Ford's continued pretrial detention.

*Weight of the Evidence Against Mr. Ford*. "This factor goes to the weight of the evidence of an accused's dangerousness or flight risk, not to the weight of the evidence pointing to his or her guilt." *United States v. Richardson*, No. 2:11-cr-220, 2011 U.S. Dist. LEXIS 122928, at *18 (S.D. Ohio Oct. 21, 2011) (citing *Stone*, 608 F.3d at 948). In this regard, there are strong indicators that Mr. Ford poses a significant danger to the community. Those indicators are included within the Court's recitation of Mr. Ford's criminal history above. The Court concludes that the weight of the evidence with respect to Mr. Ford's danger to the community is substantial.

*History and Characteristics of the Person*. As noted above, when addressing this factor, the Court initially considers Mr. Ford's character, physical condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3).

Mr. Ford has an extensive history of engaging in violent crimes. Presently, he is recovering from a gunshot wound. His mother and eight siblings are located in Columbus, where he has lived his entire life. He maintains contact with each of them. He has no stable employment history. He has limited financial resources. His criminal history involves an arrest for failure to appear at an arraignment.

Mr. Ford offers nothing but the possibility that *he* might contract COVID-19 while in the jail as the basis for his motion. His focus is off.

> A defendant's concerns that he or she would face heightened
> COVID-19 risks if incarcerated would not typically factor into a §

8

> 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm to the defendant does not usually bear on this analysis.

*United States v. Henry Clark*, No. 19-40068-01-HLT, 2020 U.S. Dist. LEXIS 51390, at *8 (D. Kan. Mar. 25, 2020). Additionally, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Id.* at *9 (in context of 18 U.S.C. § 3142(i)).

Mr. Ford's history and characteristics therefore lean toward detention.

*Nature and Seriousness of the Danger to any Person or the Community.* Again, Mr. Ford has an extensive and violent criminal history. Pretrial Services recommends detention due to that history. Accordingly, the Court finds that there are no conditions sufficient to address the concern for danger that the Defendant poses to the community. This fourth and final § 3142(g) factor weighs in favor of detention.

Utilizing *de novo* review, and after weighing all the evidence and reviewing the entire record, this Court finds under the totality of the circumstances that clear and convincing evidence supports the finding that Mr. Ford poses a danger to the safety of the community and that no condition or conditions of release would reasonably assure the safety of the community. His Motion to Revoke is **DENIED** under § 3142(g).

Mr. Ford's final stated basis for relief is Section 3142(i). That section provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for *preparation of the person's defense or for another compelling reason*.

9

(Emphasis added). Mr. Ford bears the burden of establishing circumstances warranting temporary release under § 3142(i). *United States v. Henry Clark*, No. 19-40068-01-HLT, 2020 U.S. Dist. LEXIS 51390, at *4 (D. Kan. Mar. 25, 2020). He fails to do so.

Defendant argues that his inmate status and his gunshot wound render him at a higher risk for contracting COVID-19. In particular, his wound is open and requires dressing changes. He also uses a walker which prevents him from engaging in any practical social distancing. (ECF No. 17 at 5.) He states that two Jackson Pike inmates have tested positive for COVID-19. From this, he argues that compelling reasons exist justifying his release under § 3142(i). In this regard:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the [Court] will evaluate at least the following factors:
> > (1) the original grounds for the defendant's pretrial detention,
> > (2) the specificity of the defendant's stated COVID-19 concerns,
> > (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and
> > (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.
> The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i).

*Id.* at 9; *see also United States v. Terrone*, No. 3:19-CR-00058-RCJ-CLB, 2020 U.S. Dist. LEXIS 65293, at *19 (D. Nev. Apr. 10, 2020) (utilizing same factors to address similar motion in a case with same procedural posture and noting COVID concerns are properly addressed

10

under § 3142(i)). The Court finds this guidance instructive and will therefore embark on the highlighted analysis.

*Original grounds for detention*. Judge Vascura detained Mr. Ford based upon, *inter alia*, his extensive and violent criminal history and his disregard of court orders. The record amply supports that finding, so this factor therefore leans against release.

*Specificity of Defendant's stated COVID-19 concerns*. The mere possibility of contracting COVID-19 does not equate to a compelling enough reason to justify his release. *See United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 U.S. Dist. LEXIS 49095, at *5 (E.D.N.Y. Mar. 20, 2020) (denying temporary release to inmate of advanced age and with dementia on COVID-19 grounds). "[T]he Court cannot accept [the] argument that any risk of contracting the coronavirus while incarcerated warrants temporary release." *United States v. Wilburn*, No. 1:18-cr-115, 2020 WL 1899146, at *6 (W.D. Penn. Apr. 17, 2020) (emphasis in original).While it is true that two Jackson Pike inmates have tested positive for COVID-19, "[t]he mere presence of the virus, even in a detention setting, does not automatically translate to the release of a person accused." *United States v. Andrewsh*, No. 5-19-mj-0087, 2020 WL 1904473, at *6 (M.D. Penn. Apr. 17, 2020); *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying the defendant's request for release where at least five inmates tested positive for coronavirus and the defendant suffered from allergies and asthma). Mr. Ford offers no evidence that Jackson Pike is unprepared to contain the virus or to care for those infected with the virus. *See Clark*, 2020 WL 1446895, at *6.

In addition, Defendant intones that he may be at increased risk because of his gunshot wound. (ECF No. 81 at 10.) Yet, he does not assert that condition is not being properly managed by his current facility.

11

Defendant also argues his inability to access counsel to prepare for trial is another compelling reason justifying release. But he can access counsel. The U.S. Marshals informed the Court on April 21, 2020 that Jackson Pike is allowing inmates "no-contact" visits with counsel. This means that attorneys can still visit their clients at the jail. The Court therefore finds that this consideration weighs against release.

*Effect of release plan on Defendant*. Defendant provides no details as to how he will arrive at his aunt's home. Additionally, "he offers no evidence to explain how living with his [aunt] mitigates the risk of infection. For example, he does not explain who else has or will live in or frequent the home or identify any screening practices or concrete COVID-19 precautions being taken there." *Clark*, 2020 U.S. Dist. LEXIS 51390, at *20 (D. Kan. Mar. 25, 2020). Governor DeWine's stay-at-home order is not being criminally enforced and Defendant's possible home confinement does not prevent others from visiting his aunt's residence. Those facts exacerbate Defendant's COVID-19 risks were he to be released. In contrast, access to jails is both extremely limited and strictly enforced. That serves to minimize Defendant's COVID-19 exposure. This factor thus cuts against release.

*Effect of release plan on the public*. Again, Defendant offers only that he could stay at his aunt's house. He provides no information relating to the age or underlying health conditions of his aunt. Hence, the Court lacks sufficient information to determine whether temporary release would go against current guidance limiting in-person contact with those having high-risk health conditions. *See Terrone*, 2020 U.S. Dist. LEXIS 65293, at *32. Furthermore, Mr. Ford may have been exposed to COVID-19 while in prison. Releasing him to his aunt's home would then put his aunt, and anyone else she comes in contact with, at risk for contracting the virus. *See United States of America, v. Robert Andrewsh*, No. 5:19-MJ-00087, 2020 WL 1904473, at *5 (M.D. Pa.

Apr. 17, 2020)(denying the temporary release request partly because defendant's proposed release plan would increase the risk of COVID-19 to members of the households to which he would be released and the surrounding community).

The Court also considers the risk release would place on Pretrial Services staff. In this regard:

> [S]upervising a high-risk offender out in the community will place pretrial services officers at a heightened risk of contracting the virus. [Ford] seeks release at a time when Pretrial Services Officers across the country are teleworking in shifts and seeking to minimize physical contact with defendants to reduce the risk of viral transmissions. The court finds this is a significant disadvantage when seeking to monitor defendants requiring intense supervision, as [Ford] would require.

*Id.* at *31. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 U.S. Dist. LEXIS 51390, at *21-22.

Magistrate Vascura correctly ordered Defendant detained because he is a danger to the community and no condition or conditions exist that would reduce that risk to an acceptable level. Additionally, Mr. Ford's extensive criminal history establishes that he has "been unable or unwilling to remain law-abiding for most of his adult life;" hence, the Court "has no reason to believe that he would suddenly become compliant now." *Clark*, 2020 U.S. Dist. LEXIS 51390, at *21-22. The fourth and final factor favors continued detainment and Defendant's Motion to Revoke is **DENIED** under § 3142(i) as well. (ECF No. 17).

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Revoke Magistrate's Detention Order. (ECF No. 17).

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**
